Argued and submitted September 10, 2003, decision of Court of Appeals modified in part and, as modified, affirmed; judgment of circuit court modified in part and, as modified, affirmed June 17, 2004

In the Matter of the Marriage of

David Henry KUNZE,
*Respondent on Review,*
*and*

Nola Maxine KUNZE,
*Petitioner on Review.*

(CC DO99-1014; CA A112487; SC S49796)

92 P3d 100

Donald O. Tarlow, of Brown, Tarlow & Bridges, PC, Newberg, argued the cause and filed the briefs for petitioner on review.

William J. Howe, III, of Gervurtz, Menashe, Larson & Howe, PC, Portland, argued the cause for respondent on review. With him on the brief was Robin J. Wright.

Before, Carson, Chief Justice, and Durham, De Muniz, Balmer, and Kistler, JJ.**

CARSON, C. J.

---

** Gillette, J., did not participate in the consideration or decision of this case. Riggs, J., did not participate in the decision of this case.

## CARSON, C. J.

At issue in this marital dissolution action is whether a "just and proper" division of property under ORS 107.105(1)(f) (1997), set out *post*, requires the inclusion of assets that wife had acquired separately from husband because wife integrated those assets into the parties' joint financial affairs through commingling.[1] The trial court excluded certain assets from the property division after determining that wife had proved that husband had not contributed to them. The Court of Appeals modified the property division as to two of the disputed assets, concluding that, although wife's separate funds had purchased those assets, wife had failed to rebut the presumption of equal contribution by husband under ORS 107.105(1)(f) because wife had treated those assets as shared assets of the marital partnership. *Kunze and Kunze*, 181 Or App 606, 47 P3d 489 (2002). We allowed wife's petition for review. For the reasons that follow, we modify the decision of the Court of Appeals in part and, as modified, affirm it.

## I. FACTS AND PROCEDURAL BACKGROUND

In reviewing a decision of the Court of Appeals that is an appeal from a judgment in a case constituting a suit in equity under common law, ORS 19.415(3), this court may review *de novo* or may limit its review to questions of law. ORS 19.415(4); *see also Massee and Massee*, 328 Or 195, 197, 970 P2d 1203 (1999) (stating same under *former* ORS 19.125(4) (1995), *renumbered as* ORS 19.415(4) (1997)). Because our resolution of this case is fact-dependent, and because we rely upon equitable considerations that the Court of Appeals did not discuss, we elect to review the record *de novo*. *See State ex rel SOSCF v. Stillman*, 333 Or 135, 138,

---

[1] As described in more detail later in our discussion, 337 Or at 132 n 9, 148 n 14, the legislature amended ORS 107.105(1)(f) in both 1999 and 2003. *See* Or Laws 1999, ch 587, § 1; Or Laws 2003, ch 576, § 109. Because this dissolution action was filed before the effective date of the 1999 amendments, the subsequent citations to ORS 107.105(1)(f) in this opinion refer to the 1997 version of that statute. *See* Or Laws 1999, ch 587, § 1 (setting out effective date of Oct 23, 1999). At the outset, however, we note that the legislature's 1999 and 2003 amendments to ORS 107.105(1)(f) do not affect our analysis as to the significance of commingling in determining the "just and proper" division of marital property under that statute.

36 P3d 490 (2001) (stating same approach under analogous circumstances).

Husband and wife married in 1980. At the time of the marriage, wife was 29 years old and had a master's degree in speech pathology. Husband was 22 years old and had attended some college, but did not have a college degree. Wife brought into the marriage two contiguous parcels of real property in Portland,[2] each of which included a residence (the "Germantown Road property" and the "Schoolhouse property"). Wife also brought into the marriage 400 acres of farm property in North Dakota. Husband had no assets of significant value when the parties married.

During the initial years of the marriage, both parties worked full time, although wife earned considerably more than husband did. The parties lived at the Germantown Road property and rented out the Schoolhouse property. Although wife did not place husband's name on the titles to either of those properties, wife deposited the rental income from the Schoolhouse property into the parties' joint bank account, and the parties paid expenses related to both properties from their joint account.

In 1983, wife's aunt, Johnson, died. Johnson, a California resident, and wife had enjoyed a close relationship over the years. In her will, Johnson devised to wife, among other things, a duplex residence (the "California duplex") and a commercial property (the "National City property"), both located in California. Johnson also named wife as a copersonal representative of her estate. Because Johnson's estate was complex and largely illiquid, the parties moved to California in 1984 to allow wife to perform more easily her administrative duties related to the estate. During the year that the parties resided in California, wife received unemployment compensation for two months and then worked on a part-time basis, while she also carried out her responsibilities for the estate. Husband worked for some of that year, and the parties additionally relied upon wife's savings and rental

---

[2] Except where otherwise noted, the real property that we refer to in this case is located in Oregon.

income from both the Germantown Road property and the Schoolhouse property to pay family expenses.

In 1985, wife received the California duplex and the National City property in a partial distribution from Johnson's estate. Wife sold the California duplex that year for $450,000. Wife used the buyer's cash down payment of $125,000 to pay off an encumbrance against the property and to pay costs associated with its sale. Wife received the $325,000 balance of the sale price in a promissory note and trust deed that she held in her name alone. From 1985 to 1992, wife received monthly payments on that note, which she regularly deposited into the parties' joint bank account.

At the time of its distribution to wife in 1985, the National City property was subject to a triple-net lease to a commercial tenant that expired in December 1999. The lease provided automatic rent increases at five-year intervals, with the rent set at $1,300 per month in 1985 and at $2,551 per month by 1999. Because the lease placed responsibility for the property maintenance, insurance, and taxes with the tenant, the property required little attention from the parties. Although wife never deeded an interest in the National City property to husband, she regularly deposited the lease payments from that property into the parties' joint bank account.

In 1985, the parties moved from California to North Dakota to allow husband to pursue a bachelor's degree in construction management. The parties used funds that wife had received from Johnson's estate to purchase a residence in North Dakota jointly. During the next five years, husband was a student and earned no employment income, but he made improvements on the family residence during weekends and school holidays. Wife worked full time and also performed all duties relating to the two Oregon rental properties. The parties paid family expenses and financed husband's education with wife's earnings, the note payments from sale of the California duplex, the lease payments from the National City property, and the rental income from the Oregon properties.

In August 1990, the parties' daughter was born. Shortly thereafter, the parties moved back to Oregon to live. The parties planned that wife would remain at home with

their child and that husband would find work in the construction field. After returning to Oregon, husband completed his graduation requirements, and, in spring 1991, he obtained his bachelor's degree. From 1991 to 1993, husband worked with his father and brother in a fence-building business, earning $11,865 in 1991, $5,215 in 1992, and $4,300 in 1993. From the time that he left that business in 1993 until the time of trial in August 2000, husband did not earn any further employment income.

After they had returned to Oregon, the parties sold their residence in North Dakota. In 1991, the parties used those proceeds as a down payment to purchase an undeveloped parcel of property near Newberg, upon which they had a new family home built (the "Calkins Lane property"). In 1992, the balance of the note from the sale of the California duplex, approximately $315,000, was paid to wife in full. Approximately $170,000 of those proceeds was used to purchase a four-plex residential property in Beaverton (the "Chaps Court property"), to which the parties jointly held title in tenancy by the entirety. The remainder of the proceeds was used to pay capital gains taxes, to pay off the encumbrance on the Germantown Road and Schoolhouse properties, and to upgrade the home that the parties were having built on the Calkins Lane property. In 1992, the parties also started a small cattle operation at the Calkins Lane property to retain that property's tax deferral for farm use.[3]

In December 1993, husband was injured seriously when he fell from a ladder while performing maintenance work on the Schoolhouse property. For the next 18 months, wife alone cared for the parties' child, attended to husband, and managed the Calkins Lane and investment properties. In 1995, after husband had recovered, the parties purchased three lots[4] in Newberg with the intent that husband would build homes on those lots to gain experience in construction management. To secure financing for the purchase of one of those lots, wife deeded to husband a joint ownership interest

---

[3] The cattle operation at the Calkins Lane property apparently never generated a profit for the parties.

[4] The parties originally purchased the properties as two lots, but then successfully petitioned to have one of those lots partitioned into two lots.

in the Germantown Road property. Rather than have husband build the homes himself, the parties ultimately hired a general contractor to build homes on two of the lots, and the parties sold the third lot without making improvements. The parties lost money on the overall project.

In 1997, wife began working outside the home on a part-time basis. That year, wife also sold the Schoolhouse property. The proceeds from the sale of that property were deposited into a joint account (the "PIMCO account") and were used in part for family expenses.

In 1999, husband filed for dissolution of the marriage. At the time of trial in 2000, wife was 49 years old and was earning approximately $38,000 per year as a school speech pathologist. She resided at the Calkins Lane property with the parties' daughter. Husband was 42 years old and was unemployed. He lived in one of the four-plex units at the Chaps Court property. The parties stipulated that wife would have custody of the parties' then-10-year-old daughter, subject to husband's parenting time, and the trial court set husband's child support obligation at $350 per month. Neither party sought spousal support.

At trial, the primary issue was the appropriate division of the marital property. The testimony at trial revealed that, throughout the marriage, husband had provided substantial labor, including improvements and repairs, for the benefit of the parties' real properties. The testimony also showed that, throughout the marriage, wife had performed considerable labor and services for those properties and also had acted as the primary homemaker and caregiver for the parties' daughter. Husband testified that he was able to and planned to work in the future, but that he did not know what type of work he would perform. Both parties testified that they had expected to rely upon the investment properties for income during their retirement.

Husband argued at trial that the parties should divide equally all the property that the parties held.[5] Wife

---

[5] The parties stipulated that wife would retain the North Dakota farm property that she had brought into the marriage, and they did not assign it a value for purposes of the property distribution. Husband, however, requested that the trial court consider that property in determining the "just and proper" division of the

agreed that the parties should divide equally the Calkins Lane property; the PIMCO account containing the proceeds from the sale of the Schoolhouse property; and the appreciation in the value of the Germantown Road property and the Chaps Court property that had accrued during the marriage. Wife, however, contended that she was entitled to receive, separate from the property division, her premarital equity in the Germantown Road property; her contribution to the Chaps Court property that she had made with the proceeds from the sale of the California duplex; and the National City property. She also argued that husband had an enhanced earning capacity resulting from his construction management degree that was property subject to division. As evidence in support of that position, wife introduced the testimony of an expert witness who opined that, if husband made career choices consistent with his education and training, husband's enhanced earning capacity from his construction management degree could be valued conservatively at $288,322.

The trial court, for the most part, agreed with wife's view of the property dispute. After finding that husband had not contributed to wife's premarital equity in the Germantown Road property and that wife had been the sole object of her aunt's donative intent, the court excluded from the property division, and awarded to wife separately, the values of (1) wife's premarital equity in the Germantown Road property ($65,000); (2) the National City property ($324,000); and (3) the part of the Chaps Court equity attributable to the proceeds from the sale of the California duplex ($170,000). The court included in the property division, and divided equally between the parties, the values of (1) the Calkins Lane property ($174,000); (2) the PIMCO account containing the proceeds from the sale of the Schoolhouse property ($35,608); (3) the appreciation in the value of the Chaps Court property ($51,225) and the Germantown Road property ($90,000) that had accrued during the marriage; and (4) the values of the parties' vehicles, retirement accounts, and other cash accounts (together totaling

marital property. The parties also stipulated to the division of certain other personal property, which the trial court did not consider in determining the property division in this case.

$47,465). The court also determined that husband had an enhanced earning capacity that was property subject to division, and it awarded to wife $22,616[6] for her contributions to that capacity.[7]

Husband appealed, assigning error to the trial court's exclusion of assets from the property division and to its inclusion of the enhanced earning capacity property award. The Court of Appeals determined that the trial court correctly had awarded the National City property to wife because it concluded that wife had overcome the presumption under ORS 107.105(1)(f) that husband had contributed equally to that property. *Kunze*, 181 Or App at 617-18. The court, however, concluded that the trial court had erred by excluding from the property division wife's premarital equity in the Germantown Road property and the equity in the Chaps Court property attributable to the proceeds from the sale of the California duplex. *Id.* at 618-19. In so concluding, the court determined that, although wife had established that her separate funds had purchased those assets, wife had not overcome the statutory presumption of equal contribution by husband because the parties had held those assets jointly and had commingled them with their shared financial affairs. *Id.* The court further concluded that, because no evidence at trial demonstrated that husband actually had or would derive any economic benefit from his degree, the trial court had erred by determining that husband had an enhanced earning capacity that was property subject to division. *Id.* at 620-21. Consistently with those conclusions, the

---

[6] Before the Court of Appeals, wife asserted that the trial court had assigned a value of $288,322 to husband's enhanced earning capacity. The Court of Appeals disagreed. It found instead that the trial court had assigned a value of only $22,616 to wife's interest in husband's enhanced earning capacity, which it awarded to husband to offset the shortfall to husband that otherwise would have resulted from the trial court's division of specific properties between the parties. *Kunze*, 181 Or App at 613, 613 n 4. Before this court, wife again asserts that the trial court had valued husband's enhanced earning capacity at $288,322 for purposes of the property division. We, however, agree with the Court of Appeals that the trial court had assigned a value of only $22,616 to wife's interest in that capacity.

[7] In sum, based upon the trial court's division of the marital property, the trial court's judgment of dissolution awarded to each party property with the value of $199,149 and to wife separately property with the value of $581,616, along with the North Dakota farm property.

court modified the property division to award husband a judgment of $140,116 against wife.[8] *Id.* at 621.

Wife petitioned this court for review, and we allowed the petition. As explained in more detail below, contrary to the Court of Appeals, we conclude that the trial court correctly determined that husband is not entitled to any of the disputed properties by virtue of the statutory presumption of equal contribution. We further conclude that the trial court satisfied the requirement of a "just and proper" division of property under ORS 107.105(1)(f) by awarding to wife, as separate property, the National City property and her premarital equity in the Germantown Road property. We, however, do not agree with the trial court that it is "just and proper" under ORS 107.105(1)(f) to award to wife separately the disputed equity in the Chaps Court property because, although husband did not contribute to that asset, he established that wife had converted that asset into a joint asset of the marital partnership through commingling. Finally, because we find that wife failed to show that husband's degree resulted, or likely would result, in higher earnings for husband, we conclude that the trial court's property award to wife for her contributions to husband's enhanced earning capacity was in error. Based upon those conclusions, we modify the decision of the Court of Appeals in part and, as modified, affirm it.

## II. "JUST AND PROPER" DIVISION OF PARTIES' REAL PROPERTY

We first consider the division of the real property at issue in this case. ORS 107.105(1)(f) governs the division of property in a marital dissolution action. At the time when

---

[8] The Court of Appeals arrived at that figure by awarding husband one-half of the values of both wife's premarital equity in the Germantown Road property ($32,500) and the equity in the Chaps Court property attributable to the proceeds of the California duplex ($85,000), as well as by increasing husband's award by the amount that the trial court had awarded to wife for her interest in husband's enhanced earning capacity ($22,616). *Kunze,* 181 Or App at 621. Under the Court of Appeals' modification of the property division, each party received a property award with a value of $316,649, and wife additionally received a separate property award with a value of $324,000, along with the North Dakota farm property.

this action was filed, that statutory provision provided, in part:

"(1) Whenever the court grants a decree of marital * * * dissolution * * *, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

ORS 107.105(1)(f) (1997).[9]

This court previously has observed that the legislative intent underlying ORS 107.105(1)(f) is the formulation of a property division at dissolution that is "just and proper in all the circumstances." *See, e.g., Massee*, 328 Or at 201 (so stating). Although ORS 107.105(1)(f) grants the court wide discretion to determine what constitutes a "just and proper" division of property in light of the individual circumstances of the parties, that statute recites a number of specific considerations that the court must apply in making that determination. *See id.* at 202-05 (discussing statutory considerations). In addition, to promote consistency and predictability in dissolution decrees, this court has examined the objectives underlying ORS 107.105(1)(f) and has identified equitable considerations that, along with the statutory factors, guide the court in achieving its task under that statute. *See Haguewood and Haguewood*, 292 Or 197, 201-04, 638 P2d 1135 (1981) (so stating under *former* ORS 107.105(1)(e)

___

[9] The 1999 Legislative Assembly amended the first sentence of ORS 107.105(1)(f) by substituting the word "may" for "has power * * * to." *See* Or Laws 1999, ch 587, § 1. The 2003 Legislative Assembly changed the wording of the part of ORS 107.105(1)(f) set out above by substituting "renders a judgment" for "grants a decree" and "the court may provide in the judgment" for "it may further decree as follows." *See* Or Laws 2003, ch 576, § 109. As noted previously, 337 Or at 124 n 1, those changes to the statute do not affect our analysis in this case.

(1981), *renumbered as* ORS 107.105(1)(f) (1983)). As we discuss in more detail below, the parties' arguments in this case require that we clarify the application of one of those equitable considerations under ORS 107.105(1)(f)—namely, the circumstances under which equity requires that a separately acquired asset be included in the property division because that asset had been integrated into the shared finances of the marital partnership through commingling.

A. *Operation of ORS 107.105(1)(f)*

We begin our analysis by describing the operation of ORS 107.105(1)(f). *See generally PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (in interpreting statute to discern legislature's intent, court first considers text and context of statute). As noted above, ORS 107.105(1)(f) directs the court to divide property at dissolution in a manner that is "just and proper in all the circumstances." To achieve that directive, the statute empowers the court to distribute any real or personal property that either or both of the parties hold at the time of dissolution, including property that the parties had brought into the marriage. *See* ORS 107.105(1)(f) (granting court power to divide any real or personal properties of parties to dissolution action); *see also Pierson and Pierson*, 294 Or 117, 121-22, 653 P2d 1258 (1982) (stating same under *former* ORS 107.105(1)(e) (1981)). This court describes that broad class of property within the court's dispositional authority as "marital property." *Massee*, 328 Or at 201 n 2, 206.

Although the statutory directive to fashion a "just and proper" division applies to all marital property, ORS 107.105(1)(f) imposes further considerations that apply to only real or personal property that either or both of the parties have acquired during the marriage. The statute describes that subclass of marital property—that is, property acquired during the marriage—as "marital assets." ORS 107.105(1)(f); *see also Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989) (so stating). The rebuttable presumption of equal contribution under ORS 107.105(1)(f) is one statutory consideration that applies to only marital assets.

Because ORS 107.105(1)(f) distinguishes between property brought into the marriage and marital assets, the

court's first step in applying that statute is to determine when the parties acquired the property that is at issue. If the parties acquired the property at issue before the marriage, then the court considers only what is "just and proper in all the circumstances" in distributing that property. ORS 107.105(1)(f).

■■ If a party establishes that the property at issue is a marital asset, however, then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis. That statutory presumption embodies a legislative intent to recognize that, absent evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of, the marital estate, regardless of the nature of those efforts or how the property is held. *See Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982) (discussing legislative intent underlying presumption of equal contribution under *former* ORS 107.105(1)(e) (1981)). To effectuate that intent, the presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets. *Id.* When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the "just and proper" division of the marital assets is an equal division between the parties. *See Haguewood*, 292 Or at 206 (presumption of equal contribution suggests equal division appropriate if division based upon presumption).

■ Because the presumption of equal contribution under ORS 107.105(1)(f) is rebuttable, either or both of the parties may seek to overcome it. *Massee*, 328 Or at 204. If a party seeks to overcome that presumption, then that party has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. *Id.* In assessing whether a party has satisfied that burden, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker. ORS 107.105(1)(f) (court shall consider contribution of spouse as homemaker). *Cf. Denton and Denton*, 326 Or 236, 243-44, 951 P2d 693 (1998) (wife's willingness to relocate, as well as her

economic and domestic efforts, were contributions to husband's enhanced earning capacity). If a party ultimately rebuts the presumption that the other spouse contributed equally to a disputed marital asset, then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is "just and proper in all the circumstances," including the proven contributions of the parties to the asset. *Massee,* 328 Or at 205. When a party has proved that a marital asset was acquired free of any contributions from the other spouse, however, this court has determined that, absent other considerations, it is "just and proper" to award that marital asset separately to the party who has overcome the statutory presumption. *See Pierson,* 294 Or at 123 (so stating).

After the court makes its preliminary determination of the appropriate division of the marital assets by applying the statutory presumption, ORS 107.105(1)(f) next requires that the court consider what division of all the marital property—that is, both the marital assets and any other property that the parties had brought into the marriage—is "just and proper in all the circumstances." By contrast to the focus upon the parties' respective contributions under the statutory presumption, the court's final inquiry as to the "just and proper" division concerns the equity of the property division in view of all the circumstances of the parties. *See Seefeld and Seefeld,* 294 Or 345, 351, 657 P2d 201 (1982) (so describing court's inquiry into "just and proper" division of marital property under *former* ORS 107.105(1)(e) (1981)). Although the inquiry into the "just and proper" division necessarily includes consideration of the statutory factors, including the court's determination under the presumption of equal contribution, that inquiry also takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable. *See Haguewood,* 292 Or at 206-07 (division of martial property under *former* ORS 107.105(1)(e) (1981) requires consideration of social and financial objectives of dissolution); *Jenks and Jenks,* 294 Or 236, 241-42, 656 P2d 286 (1982) (statutory presumption is only one factor in achieving equitable division of marital property). Although they will vary according to the individual

circumstances of the parties, this court has identified some of the equitable considerations under ORS 107.105(1)(f) to include the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and, as discussed in more detail below, the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling. *See Richardson and Richardson*, 307 Or 370, 381-82, 769 P2d 179 (1989) (considering economic self-sufficiency); *Seefeld*, 294 Or at 351 (considering needs of children); *Jenks*, 294 Or at 242-43 (considering integration of asset); *Haguewood*, 292 Or at 208 (considering preservation of assets). The trial court's ultimate determination as to what property division is "just and proper in all the circumstances" is a matter of discretion. This court will not disturb that discretionary determination unless it concludes that the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires. *See Haguewood*, 292 Or at 199-204 (discussing appellate review of discretionary determination under *former* ORS 107.105(1)(e) (1981)).

B. *Commingling and Court's Inquiry Under ORS 107.105(1)(f)*

With that statutory framework in mind, we now turn to the parties' arguments concerning the significance of commingling to the court's inquiry under ORS 107.105(1)(f). Wife argues that, in addition to the National City property, she has rebutted the presumption of equal contribution to the disputed equity in the Germantown Road property and the Chaps Court property. She contends that the Court of Appeals failed to follow the statutory directive set out in ORS 107.105(1)(f) because, in reaching a contrary conclusion, that court did not focus upon the parties' respective contributions but, instead, relied upon the fact that wife had commingled those assets with the parties' joint financial affairs. According to wife, commingling justifies the division of a separately acquired asset only when the source of that asset has become obscured or when the social and financial objectives of the dissolution otherwise cannot be achieved. In this case, wife argues that, even if she commingled the disputed assets, her

contributions are identifiable and outweigh any other consider-
ations relating to the equitable division of the marital
property.

Husband responds that, when a spouse commingles
a separately acquired asset with the parties' joint assets,
then the fact that that asset was acquired separately
becomes irrelevant. That is so, husband argues, because, by
commingling the asset, the spouse has manifested an intent
to transform the separately acquired asset into a joint asset
that is subject to equal division at dissolution. Based upon
that argument, husband contends that, in addition to the dis-
puted equity in the Germantown Road property and the
Chaps Court property, he also is entitled to an equal part of
the National City property because that property generated
income that the parties had shared during their marriage
and that was an integral part of the parties' joint retirement
plans.

This court first discussed commingling as a consid-
eration under ORS 107.105(1)(f) in *Jenks*, 294 Or 236. In that
case, this court held that, although the husband had over-
come the presumption that the wife had contributed equally
to a disputed marital asset, a "just and proper" division nev-
ertheless required the inclusion of that asset because the
husband had integrated that asset into the parties' common
financial affairs. *Id.* at 241-43. Since that decision, this court
has not clarified further when the integration of a separately
acquired asset through commingling requires that asset to be
included in the property division under ORS 107.105(1)(f). In
light of the parties' competing contentions in this case, we
take the opportunity to do so here.

1. *Commingling and Tracing Contributions Under
 ORS 107.105(1)(f)*

At the outset, because it appears to underlie the
Court of Appeals' reasoning below, we observe that the par-
ties are in agreement as to one way that commingling may
affect the court's analysis under ORS 107.105(1)(f)—that is,
the court's identification of the parties' respective contribu-
tions to a disputed property in deciding whether the statu-
tory presumption of equal contribution is rebutted. The

parties recognize that, as a threshold evidentiary matter in challenging the statutory presumption under ORS 107.105(1)(f), a spouse must be able to identify that spouse's separate contribution to claim entitlement to a disputed asset as an asset that was acquired separately. The parties further agree, as do we, that, when a spouse has commingled a separately acquired asset with the joint assets of the marital partnership, that act of commingling may make the identification of the separately acquired asset so unreliable as to defeat any claim on that spouse's part of an unequal contribution by the other spouse. Stated differently, when a spouse has mixed a separately acquired asset with the joint assets of the marital partnership—for example, by depositing separately acquired funds into an active account that also contains joint funds—then that act of commingling may preclude the court from identifying that spouse's separate contribution with sufficient reliability to rebut the statutory presumption that both spouses have contributed equally to the disputed asset. Although this court previously has not confronted such an evidentiary defect, the Court of Appeals decision in *Olinger and Olinger*, 75 Or App 351, 707 P2d 64 (1985), *rev den*, 300 Or 367 (1985), is illustrative of that point.

In *Olinger*, the husband contended that he had overcome the presumption of equal contribution by the wife to two businesses that the parties had purchased during the marriage with funds from their joint bank account and from a business that the husband had brought into the marriage. *Id.* at 353. In rejecting that argument, the Court of Appeals refused to speculate as to which part of the funds used to purchase the disputed businesses had constituted the husband's separate property. *Id.* at 355. Although it concluded that the husband's premarital equity in the business that he had brought into the marriage was the husband's separate property, the court observed that it could not trace the funds taken from that business as the husband's separate property because, during the course of the marriage, that business had become a mix of the husband's separate property (that is, his premarital equity) and the parties' joint property (that is, the appreciation of the business during the marriage). *Id.* at 355-56. In light of that conclusion, the court awarded to the husband separately only his premarital equity in the business

that he had brought into the marriage, and it divided equally between the parties the remaining property. *Id.* at 356-57.[10]

Although ORS 107.105(1)(f) does not require the court to undertake the task of tracing the parties' respective contributions when commingling has made the identification of those contributions unreliable, the fact that a party has commingled a separately acquired asset with the shared finances of the marital partnership does not create that difficulty in all circumstances. However, even if acts of commingling do not preclude the court from identifying the source of a disputed asset with sufficient reliability, the integration of a separately acquired asset into the parties' joint financial affairs through commingling may require the inclusion of that asset in the property division for a different reason. Specifically, as discussed below, acts of commingling may operate to convert a separately acquired asset into a joint asset of the marital partnership.[11]

2. *Commingling and "Just and Proper" Distribution of Marital Property Under ORS 107.105(1)(f)*

In *Jenks*, 294 Or at 242, and shortly thereafter in *Seefeld*, 294 Or at 350, and *Miller and Miller*, 294 Or 660, 665, 661 P2d 1361 (1983), this court endorsed a "rescission" approach to the division of property—that is, to award each spouse that spouse's separately acquired assets—if the dissolution occurred before the parties' financial affairs had

---

[10] We note that, in *Stice*, 308 Or 316, this court considered commingling for a different reason under the statutory presumption of equal contribution. In concluding that the wife had failed to rebut the statutory presumption in that case, the court found it persuasive that the parties had commingled their financial affairs and that the wife had not shown that the husband considered the disputed assets to be the wife's separate property. *Id.* at 328-29. Specifically, the court observed that that evidence strengthened the presumption that the husband had made an equal contribution by showing that the husband had enabled the wife to devote her income to the purchase of the disputed assets. *Id.* The reasoning in *Stice*, however, is inapposite to this case, because husband here does not contend that his efforts during the marriage contributed either directly or indirectly to the disputed marital property; rather, as discussed below, he argues only that he is entitled to a part of those assets because the wife's acts of commingling converted those assets into joint assets of the marital partnership.

[11] Some jurisdictions refer to the change in the character of separately acquired property to joint property from commingling as "transmutation." *See, e.g., Peterkin v. Peterkin*, 293 SC 311, 360 SE 2d 311 (1987); *Stainbeck v. Stainbeck*, 11 Va App 13, 396 SE 2d 686 (1990).

become intertwined. In each of those cases, the court explained that, the more integrated the parties' finances become during the course of a marriage, the less significant is the origin of each asset in fashioning the "just and proper" division of the marital property at dissolution. *See Jenks*, 294 Or at 242 (so stating); *Seefeld*, 294 Or at 350 (same); *Miller*, 294 Or at 665 (same). In explaining the rationale underlying that consideration, the court in *Jenks* observed:

> "When couples enter marriage, they ordinarily commit themselves to an indefinite shared future of which shared finances are a part. Acquisitions are made, foregone or replaced for the good of the family unit rather than for the financial interests of either spouse. Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of the marriage. All this may be modified by agreement, of course, but, by the nature of the marital relationship, couples ordinarily pledge their troth for better or worse until death parts them and their financial affairs are conducted accordingly."

294 Or at 242. Stated differently, the court recognized that, when a spouse has treated a separately acquired asset as a joint asset of the marital partnership, then the parties' shared financial decisions during the marriage have been made in reliance of that asset without consideration to whether it was separately or jointly acquired. This court's decisions in both *Jenks* and *Seefeld* illustrate the application of that equitable consideration.

In *Jenks*, 294 Or 236, the disputed property consisted of real property that the husband alone had acquired by gift during the marriage. The court concluded that, because the husband's acquisition of that property was unrelated to any efforts by the wife, the husband had overcome the presumption that the wife had contributed equally to its acquisition. *Id.* at 241. In considering the "just and proper" distribution of the marital property, however, the court determined that the inclusion of the disputed property in the property division nevertheless was required. *Id.* at 241-43. Specifically, the court observed that the parties had used the disputed property as their marital home, which had enabled the parties to devote funds that otherwise would have been

used for that purpose for other things. *Id.* at 242-43. In addition, the court noted that, although the husband had held it in his sole name, the parties had treated the property as a joint asset, with the parties together renovating the property and using it to raise their children. *Id.*

Similarly, in *Seefeld*, 294 Or 345, this court declined to award the equity that the husband had invested in the family home to the husband as separate property. The court explained that, although the husband had proved the amount of his separate contribution to the family home, equity required the inclusion of that asset in the property division because the parties had purchased the home together and had used it to raise their child. *Id.* at 350-51.

Since those decisions, the Court of Appeals frequently has applied commingling as a consideration when dividing property under ORS 107.105(1)(f), although not always at the same point in its analysis and not always with consistent results. In its decisions, that court generally has examined the facts of each case to discern whether a spouse had intended to retain the separately acquired asset as separate property or whether, instead, that spouse's treatment of the separately acquired asset demonstrated an intent for that asset to become a joint asset of the marital partnership. *See, e.g., Albers and Albers*, 174 Or App 243, 248-49, 23 P3d 430 (2001) (considering wife's different treatment of separately acquired inheritances). To discern the spouse's intent, that court has considered a number of different factors, including (1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset. *See, e.g., Albers*, 174 Or App at 249 (considering title); *Budge and Budge*, 150 Or App 209, 216-17, 945 P2d 1101 (1997) (reliance upon treatment of disputed asset as shared property); *Taylor and Taylor*, 121 Or App 635, 639-40, 856 P2d 325 (1993), *modified on recons*, 124 Or App 581, 863 P2d 473 (1993), *rev den*, 319 Or 626 (1994) (reliance); *Becker and Becker*, 122 Or App 567, 571, 858 P2d 480 (1993), *rev den*, 318 Or 60 (1993) (reliance); *Hering and Hering*, 84 Or App 360, 363, 733 P2d 956 (1987), *rev den*, 303 Or 534 (1987) (control over asset); *cf. Hadden and Hadden*, 127 Or App 483, 873 P2d 394 (1994) (applying

rescission approach when neither party benefitted from other's contribution, and both parties kept finances segregated).

■■■■■ We agree with the Court of Appeals that, in deciding whether the court should include a separately acquired asset in the property division because of commingling, the court's inquiry properly focuses upon whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate. We further agree with the considerations, discussed above, that the Court of Appeals has applied to decide whether equity requires the court to include a separately acquired asset in the property division under ORS 107.105(1)(f) because of the integration of that asset into the shared finances of the marital partnership through commingling. We caution, however, that acts of commingling do not mandate in all cases the inclusion of separately acquired property in the property division. Instead, the court must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and also evaluate whether any inequity would result from the award of that asset to that spouse as separate property.[12] With that analysis in mind, we now turn to the application of ORS 107.105(1)(f) to the disputed properties in this case.

C. *Application of ORS 107.105(1)(f) to Disputed Properties*

■■■ Because it is our preliminary guide to the "just and proper" division of property under ORS 107.105(1)(f), we begin by considering the application of the presumption of equal contribution to the disputed properties in this case— that is, the National City property, wife's premarital equity in the Germantown Road property, and the equity in the

---

[12] In *Massee*, 328 Or at 210, this court stated that "[i]t is not proper for the court to focus solely on either the duration of the marriage or the extent to which the parties commingle their financial affairs when dividing that marital property." In so stating, this court intended only to caution that the court first must apply the statutory considerations under ORS 107.105(1)(f), including the presumption of equal contribution to marital assets, before applying commingling as an equitable consideration.

Chaps Court property attributable to the proceeds from the sale of the California duplex.[13] We first consider the National City property. As did the trial court, the Court of Appeals concluded that the National City property was a marital asset, but that wife had rebutted the presumption that husband had contributed equally both to its initial acquisition and to its appreciation of value during the marriage. *Kunze*, 181 Or App at 617-18. The Court of Appeals based those conclusions upon its findings that wife had been the sole object of her aunt's donative intent and that the appreciation in the value of that property had not resulted from any efforts by either of the parties. *Id.*

On *de novo* review, we agree with the Court of Appeals' finding that wife had been the sole object of her aunt's donative intent and, for that reason, also agree with its conclusion that wife has overcome the presumption that husband contributed equally to the initial acquisition of that property. *Cf. Pierson*, 294 Or at 123 (wife rebutted presumption of equal contribution by husband because wife's acquisition of property was by sole inheritance unaffected by husband). In addition, because we agree with that court's finding that the National City property had required minimal attention from either of the parties during the marriage, and because husband does not contend that his contributions during the marriage either directly or indirectly affected that property, we further agree with that court's conclusion that wife has overcome the presumption that husband contributed equally to the appreciation of that property during the marriage. Thus, although we still must consider whether a "just and proper" division of the marital property requires that husband be awarded a part of that marital asset, we conclude that husband is not entitled to a part of the value of the National City property by virtue of the statutory presumption.

We next consider wife's premarital equity in the Germantown Road property and the disputed equity in the

---

[13] As noted previously, 337 Or at 128-29, wife agreed at trial that, based upon his contributions during the marriage, husband was entitled to an equal part of the appreciation in the values of the Germantown Road property and the Chaps Court property that had accrued during the marriage.

Chaps Court property. The trial court concluded that, because she had brought it into the marriage, wife's premarital equity in the Germantown Road property was not a marital asset and that, because husband had not contributed to it, it was "just and proper" to award that equity to wife. As to the Chaps Court property, the trial court concluded that, although the parties had acquired that property during the marriage, wife had rebutted the presumption that husband had contributed equally to its initial equity because wife had purchased that equity only with funds from her separate inheritance.

On appeal, the Court of Appeals reached a contrary holding as to both the disputed properties. That court first determined that, because wife had deeded husband a joint ownership interest in the Germantown Road property during the marriage, wife's premarital equity in that property was a marital asset subject to the presumption of equal contribution. *Kunze*, 181 Or App at 618. In applying that statutory presumption to the disputed equity in the Germantown Road property and the Chaps Court property, the court further concluded that, although wife's separate funds had purchased those assets, wife had failed to prove that husband's contribution was not equal to hers. *Id.* at 618-19. The court based that conclusion upon the fact that the parties had held those assets jointly, explaining that, unless a spouse has segregated a separately acquired asset from the joint assets of the marital partnership, then the court will not trace that asset back to its original source. *Id.* Particularly as to the Germantown Road property, the court also found it significant as to the statutory presumption that husband had provided considerable labor that had benefitted that property. *Id.*

On *de novo* review, we agree with the trial court's conclusion that wife's premarital equity in the Germantown Road property was not a marital asset subject to the statutory presumption under ORS 107.105(1)(f) and further agree with that court's conclusion that, as to the disputed equity in the Chaps Court property, wife has overcome the presumption that husband contributed equally. Although wife held both those properties jointly with husband at the time of the

dissolution, that fact did not preclude the court from ascertaining wife's separate contribution. Indeed, wife presented undisputed evidence that the equity at issue in the Germantown Road property and the Chaps Court property had originated solely from her separate funds. In addition, husband's efforts during the marriage to improve the Germantown Road property contributed to its increase in value during the marriage, but did not affect the equity that wife had in that property before the marriage. *See Jenks*, 294 Or at 241 n 2 ("[E]fforts expended after acquisition are relevant to division of the value of improvements or appreciation, but do not affect the preceding acquisition."). Thus, although a "just and proper" division may require that husband be awarded a part of those marital assets, we conclude that husband is not entitled to a part of the premarital equity in the Germantown Road property and the equity in the Chaps Court property attributable to the proceeds from the sale of the California duplex as a result of his overall contributions to the marital partnership.

■ Having concluded that wife has rebutted the statutory presumption of equal contribution by husband to the disputed assets, we now must consider what division of property is "just and proper in all the circumstances." ORS 107.105(1)(f). Because she has established that husband did not contribute to their acquisition, wife presumptively is entitled to receive those properties separate from the property division unless other considerations require a different result.

We first consider the impact of wife's acts of commingling, beginning again with the National City property. The trial court determined that, although husband had enjoyed the benefit of the income from that property during the marriage, wife had not integrated that property into the parties' joint financial affairs such that an equitable division required the inclusion of that property. In that regard, the trial court pointed out that wife had held that property separately and that the property was not included in any formal estate planning. On *de novo* review, we find no reason to disturb the trial court's determination.

■ We next consider wife's premarital equity in the Germantown Road property. The trial court did not make any express findings regarding the commingling of that property, but it awarded that property to wife separately. As noted, the Court of Appeals, by contrast, ordered an equal division of that property based upon the facts that wife had added husband to its title and that husband had expended considerable labor to that property's benefit.

On *de novo* review, we are persuaded that the trial court's disposition should not be disturbed. Although wife added husband to the title of that property, she did so only four years before the dissolution and only to secure financing for the parties' construction project. In addition, except during the initial years of the marriage, the parties did not use that property as their marital residence. Finally, although husband contributed labor to that property, he has received the benefit of that contribution from the division of the appreciation of that property that had accrued during the marriage.

■ Lastly, we consider the disputed equity in the Chaps Court property. Although the trial court expressed some reservation as to whether wife should receive that equity separately, it ultimately determined that wife's contributions outweighed commingling as an equitable concern. Specifically, the court found that the parties had owned that property for only six years and that the parties' joint efforts relating to that property did not justify a distribution of wife's separate equity to husband. The Court of Appeals, as noted, found that husband was entitled to an equal part of that property because the parties had held that property jointly.

On *de novo* review, we conclude that the trial court erred in excluding the disputed equity in the Chaps Court property from the property division. Wife's acts of commingling as to the Chaps Court property reveal that she intended that property, including the equity that she contributed from the funds from her inheritance, to be the joint property of both parties. Wife purchased the Chaps Court property jointly with husband in tenancy by the entirety, and, by contrast to the Germantown Road property, she introduced no evidence at trial that showed that she had intended to retain

her separately acquired equity in that property as her separate property. Under those circumstances, we conclude that husband established that wife had converted that asset to a joint asset of the marital partnership through commingling, and it is "just and proper in all the circumstances" to divide that asset equally.

Finally, we consider whether any other equitable considerations compel the inclusion of wife's separately acquired properties in the property division. We find none. Husband testified at trial that, although he had not been employed for the preceding seven years, nothing prevented him from working on a full-time basis in the future. *Cf. Richardson*, 307 Or at 382 (awarding wife larger share of marital assets in part because her emotional maladies prevented her from working full time). In addition, husband was 42 years old at the time of the trial, and, although he testified that he did not know what type of work he would perform in the future, he has sufficient education and skills to be competitive in the labor market for a long time to come and to prepare for his retirement. Finally, an equal division of the jointly acquired marital assets is adequate to enable both parties to achieve a reasonable degree of economic self-sufficiency. *Cf. Pierson*, 294 Or at 124 (unequal division of marital assets warranted to allow both spouses to achieve economic self-sufficiency). In sum, we conclude that husband is entitled to a part of the initial equity in the Chaps Court property, but is not entitled to a part of the National City property or wife's premarital equity in the Germantown Road property.

### III. ENHANCED EARNING CAPACITY PROPERTY AWARD

We next consider the trial court's property award to wife for her contributions to husband's enhanced earning capacity. Although the 1999 Legislative Assembly eliminated recognition of enhanced earning capacity as a form of divisible property at dissolution, ORS 107.105(1)(f) (1997) formerly provided, in part:

> "The present value of, and income resulting from, the future enhanced earning capacity of either party may be

considered as property. The presumption of equal contribution to the acquisition of martial property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."[14]

As noted previously, 337 Or at 130, the Court of Appeals concluded that husband did not have an enhanced earning capacity that was property subject to division because wife presented no evidence at trial that husband actually had or would derive any economic benefit from his degree. Specifically, the court determined that, because ORS 107.105(1)(f) (1997) describes a spouse's property interest in the other spouse's enhanced earning capacity as "an interest in the income resulting" from that capacity, the legislature intended that the capacity actually must produce earnings to constitute divisible property. *Kunze*, 181 Or App at 620, 620 n 7. In this case, the court determined that any value that husband had in his construction management degree was hypothetical because, although husband had earned that degree 10 years before the trial, he never had made use of the degree, and no evidence suggested that he planned to make use of it in the future. *Id.* at 620. Based upon those findings, the court concluded that the trial court had erred by awarding wife $22,616 for her interest in husband's enhanced earning capacity. *Id.*

On *de novo* review, we agree with the Court of Appeals that, because wife presented no evidence at trial that husband had used his degree in the past or planned to use it in the future, wife failed to establish that husband has derived any economic benefit from his degree. For the reasons that the Court of Appeals articulated, we further agree that, to be entitled to a property award for enhanced earning

---

[14] As noted previously, 337 Or at 124 n 1, ORS 107.105(1)(f) (1997) applies in this case, because this dissolution action was filed before the effective date of the 1999 amendment.

capacity under ORS 107.105(1)(f) (1997), a party must show that his or her contributions resulted, or likely would result, in increased earnings for the other spouse.[15] Because wife has not made such a showing here, the judgment of dissolution also is modified to eliminate the enhanced earning capacity property award to wife by awarding husband an additional $22,616 in the property division.

## IV. CONCLUSION

In sum, we conclude that the trial court correctly determined that husband is not entitled to any of the disputed real properties by virtue of the statutory presumption of equal contribution under ORS 107.105(1)(f). We further conclude that the trial court's separate property award to wife of the National City property and her premarital equity in the Germantown Road property is "just and proper in all the circumstances." As to the disputed equity in the Chaps Court property, however, we conclude that it is "just and proper in all the circumstances" to divide that property equally between the parties because husband established that wife had converted that asset into a joint asset of the marital partnership through commingling. Finally, because wife failed to show that husband's degree resulted, or likely would result, in higher earnings for husband, we conclude that the trial court's property award to wife for her contributions to husband's enhanced earning capacity was in error. Consistently with those conclusions, the judgment of the trial court is modified to award husband a judgment in the amount of $107,616 against wife, plus simple interest at a rate of nine percent per annum, payable in full on or before January 1, 2005. Interest shall accrue from the date of this decision but shall not be payable until principal balance is due.

---

[15] At the same time that the 1999 Legislative Assembly amended ORS 105.107(1)(f) to eliminate enhanced earning capacity as a form of divisible property, it also enacted a new spousal support statute that includes a provision for compensatory spousal support. *See* Or Laws 1999, ch 587, § 1. We offer no opinion as to whether a showing of actual or likely increased earnings also is necessary for a compensatory spousal support award under that statute. *See* ORS 107.105(1)(d)(B) (setting out factors to be considered in awarding compensatory spousal support).

The decision of the Court of Appeals is modified in part and, as modified, affirmed. The judgment of the circuit court is modified in part and, as modified, affirmed.