Argued and submitted October 26, 2006, Reynolds High School, Troutdale; judgment modified to provide equalizing judgment in favor of wife in amount of $31,813.75, supplemental judgment awarding husband attorney fees reversed, otherwise affirmed December 19, 2007, petition for attorney fees denied March 19, 2008
See 218 Or App 723, 181 P3d 771 (2008)

In the Matter of the Marriage of

Lisa Lynn ORNELAS,
nka Lisa Lynn Martin,
*Petitioner-Appellant,*
*and*

Steven Frederick ORNELAS,
*Respondent-Respondent.*

Washington County Circuit Court
C022842DRB; A128901

174 P3d 1077

Andy Simrin argued the cause and filed the brief for appellant.

Robert M. Lusk argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Wife appeals from a judgment of dissolution of marriage. She asserts three assignments of error, challenging first, the trial court's treatment of a diamond ring as marital property; second, its ruling that husband was entitled to credit in the property division for a debt he had assumed on behalf of wife's daughter; and, third, its award of attorney fees to husband. We reject without discussion the second assignment of error regarding the disputed debt, modify the property division with respect to the ring, and reverse the award of fees.

On *de novo* review, ORS 19.415(3), giving deference to the trial court's implied credibility findings, *Lind and Lind*, 207 Or App 56, 58, 139 P3d 1032 (2006), we find the following facts, which are undisputed unless otherwise indicated. Wife and husband lived together for five years before marrying. During that period of premarital cohabitation, wife's mother gave to wife a diamond wedding ring that she had inherited. No one was aware of the ring's value at that time.

Husband testified that, because he suspected the diamond might be valuable, he began carrying the ring in his pocket to make sure that it did not get lost. However, wife denied that husband ever carried the ring in his pocket and testified instead that she kept it in her purse. After they were married, the couple eventually had the ring appraised and, according to husband, the appraiser indicated that the diamond weighed three karats and was worth $25,000. Husband wanted to sell the ring and invest the proceeds into the family home. Wife, however, wanted to have the diamond placed into a new setting. Ultimately, they spent $419 of marital funds to reset the stone and resize the ring so that wife could wear it. Wife wore the ring until the commencement of these proceedings, when she returned the ring to her mother.

Wife filed for dissolution of the marriage, and the matter was transferred to arbitration, where, among other things, the arbitrator awarded wife the ring as her separate property. After obtaining an equalizing judgment of $37,876,

wife appealed to the circuit court. However, she was even less happy with the resolution arrived at there. Instead of treating the ring as separate property, as the arbitrator had done, the circuit court concluded that the ring had been sufficiently commingled into marital property to be considered part of the marital estate. The court stated:

> "Wife testified that * * * [she] gave [the ring] back to her [mother]. It was marital property and wife had no right to dissipate these funds. The parties had both carried it around and eventually found it to be of value and had it reset with marital funds. I find there was clear intent to contribute this to the family use although to be worn by wife only."

The court then awarded the ring to wife and ascribed its value, $25,000, to her in the overall property distribution. Those changes—and a few others not at issue in this appeal—reduced wife's equalizing judgment to $19,313.75. Additionally, in a supplemental judgment, the circuit court awarded husband $27,000 in attorney fees. Wife, as noted above, assigns error to the inclusion of the ring in the property division and the award of attorney fees. We address each of those challenges in turn.

■ ■    We begin with the disposition of the ring. ORS 107.105(1)(f) provides generally for a division of marital property that is "just and proper in all the circumstances." *See Kunze and Kunze*, 337 Or 122, 132, 92 P3d 100 (2004). The statute provides further that "[t]here is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held." ORS 107.105(1)(f). Because the statute distinguishes between property acquired before the marriage and property acquired during the marriage, the court's first step in applying the statute is to determine when the property was acquired. *Kunze*, 337 Or at 133-34. For property acquired before the marriage, a court considers only what is "just and proper under the circumstances" in distributing it. *Id.* at 134. An asset acquired before marriage, even during cohabitation, is not considered a divisible marital asset to which the presumption of equal contribution applies, unless that premarital asset has "been

integrated into the shared finances of the marital partnership through commingling." *Id.* at 133; *Edwards and Edwards*, 209 Or App 555, 557, 149 P3d 196 (2006).

■■ In deciding whether the court should include a separately acquired asset in the property division because of commingling, the court focuses on whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for the property to become joint property of the marital estate. *Kunze*, 337 Or at 142. To discern the spouse's intent, the court looks at such factors as whether the disputed property was jointly or separately held, whether the parties shared control over it, and the degree of reliance on the disputed property as a joint asset. *Id.* at 141. Even with some evidence of commingling, "the court must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership * * *." *Id.* at 142.

■ There is no dispute that wife acquired the ring before marriage. Nevertheless, husband asserts, and the trial court agreed, that the ring had been commingled into the shared finances of the marital partnership when the parties shared control of the ring by carrying it around on their persons and, on discovering its value, had it reset using marital funds. Wife contends that those actions do not evince any intent to convert the ring from separate to joint property; rather, she asserts that the evidence is to the contrary.[1]

We agree with wife. Although the trial court found that husband did assert some control over the ring by carrying it in his pocket, that action does not support an inference that wife permitted him to carry it because she intended that he would share in its value. Neither wife nor husband indicated in their testimony that they understood the ring to be

---

[1] Wife also argues that she never acquired the ring at all; rather, the ring was a "conditional gift" from her mother, with the understanding that if the ring turned out to be valuable, wife's mother could demand its return. At trial, wife's mother corroborated that assertion, but wife's own testimony contradicted it. In concluding that the ring was marital property, the trial court implicitly found that wife's mother's testimony was not credible. We adhere to that credibility finding and also reject wife's "conditional gift" assertion.

joint property. Rather, husband simply asserted that he carried the ring because he suspected that it might be valuable and did not want it to be lost. Indeed, once they learned the value of the ring, wife maintained exclusive control over it. Not only did wife prevail in her desire to reset the stone despite husband's desire to sell it and apply the proceeds to marital property, but after the ring was remounted and resized to fit wife, she wore it from that point on.

Moreover, the trial court's suggestion that the investment of $419 of marital funds to reset the ring was sufficient to convert the ring from separate to shared property was in error. This is not a case where the act of commingling the ring with joint assets of the marital partnership has made identification of the separately acquired asset sufficiently unreliable so that it is subject to the statutory presumption of equal contribution. *See Kunze*, 337 Or at 137-38 (identifying that as a threshold concern). Rather, the value of the diamond, $25,000, is easily distinguishable from the cost to reset it. Further, there is no indication that the ring was treated as a joint asset by reason of the parties' shared financial decisions being made in reliance on it. *Id.* at 140.

Overall, husband did nothing to contribute to the original acquisition of the ring and, after obtaining the ring, wife maintained control over it, the parties did not add significant value to the ring using joint property, and they did not treat the ring as a joint asset or make shared financial decisions in reliance on it. As a result, the ring retained its character as wife's separate property, and we conclude that it is just and equitable for her to retain it as her separate property. The trial court erred when it ascribed $25,000 to wife in the property distribution to account for the value of the ring, and we modify the property division accordingly.

■ We next address wife's challenge to the award of attorney fees, which we review for errors of law. *St. Sauver and St. Sauver*, 196 Or App 175, 188, 100 P3d 1076 (2004). Wife contends that husband failed to allege a right to attorney fees as required by ORCP 68 C(2)(a). That rule provides:

"A party seeking attorney fees shall allege the facts, statute or rule that provides a basis for the award of such fees in a pleading filed by that party. * * * No attorney fees

shall be awarded unless a right to recover such fee is alleged as provided in this subsection."

Here, wife's initial petition for dissolution alleged a claim for attorney fees. Husband's response, in compliance with ORS 107.055, provided only, "Respondent appears."[2] Wife then filed a "Response, Answer, and Counterclaims." The caption properly named wife as petitioner and husband as respondent, but wife's pleading stated in the body that "the [r]espondent should be awarded all of her attorney's fees and costs incurred herein * * *." It is apparent that wife intended a reference to herself as petitioner, rather than respondent.

After arbitration, wife filed an amended petition for dissolution of marriage, again asserting her right to attorney fees. After the trial court granted a judgment of dissolution, husband filed documents captioned "Respondent's Statement of Attorney Fees" and "Respondent's Supplemental Statement of Attorney Fees." Over wife's objection, the trial court awarded husband his fees. Wife contends that award is error because husband never filed a pleading alleging his right to attorney fees.

■  Husband first responds that wife's accidental filing alleging that "respondent" is entitled to attorney fees satisfied the requirements of ORCP 68 C(2). "It was her error," he contends, "and she should not be allowed to take advantage of the confusion she created and invited." We disagree. ORCP 68 C(2) explicitly provides that "[n]o attorney fees shall be awarded unless a right to recover such fee is alleged as provided in this subsection"—that is, in a pleading "filed by *that* party." (Emphasis added.) Husband did not file the pleading on which he relies.

Husband next contends that the procedural requirements set forth in ORCP 68 C(2) have been replaced by ORS 107.055, which provides that a respondent is not

---

[2] ORS 107.055 provides:

"The respondent shall not be required to answer a petition for annulment or dissolution of a marriage or for separation except by filing a general appearance or a general appearance with counterclaims relating to matters other than the grounds for annulment, dissolution or separation. Affirmative defenses are abolished."

required to answer a petition other than to file a general appearance and any counterclaims. *See generally Wagner and Wagner,* 89 Or App 102, 106, 747 P2d 400 (1987) (a husband's response that "[r]espondent appears" was sufficient to satisfy the requirement in ORCP 71 B that a party file affirmative claims with a motion). However, we have already held that the pleading requirements set forth in ORCP 68 C(2) apply to dissolution cases. *McCulloch and McCulloch,* 99 Or App 249, 251, 781 P2d 1240 (1989) (the wife's assertion of a right to attorney fees was adequate under ORCP 68 C(2) despite the fact that she failed to assert the statutory basis for the award, because the factual basis for the fee award was alleged).

■  Having established that ORCP 68 C(2) applies, we must address whether husband's failure to comply with that rule is fatal to the award or can be likened to the technical defect found in *McCulloch*. In *O'Neal and O'Neal,* 158 Or App 431, 974 P2d 785 (1999), we addressed whether the trial court erred when it failed to follow the mandatory procedure for seeking attorney fees set forth in ORCP 68 C(4). In reversing the award of attorney fees, we explained:

> "On previous occasions, we have disregarded procedural defects when no party is prejudiced by them. * * * However, there is a significant difference between a technical defect in [compliance] and elimination of the procedure altogether. The process outlined in ORCP 68 C(4) for seeking attorney fees is mandatory, as shown by the use of the word 'shall.' * * * Denial of this important process corrupts the system and infringes on the rights of each party."

*Id.* at 435. Likewise, in *Young and Young,* 172 Or App 108, 17 P3d 577 (2001), we reversed an award of fees where the trial court failed to allow one party to respond to the other party's statement of fees, as required by ORCP 68 C(4)(b). We explained, "[T]he procedural requirements of ORCP 68 are mandatory and [the] failure to follow those procedures is prejudicial to the party deprived of the appropriate process. * * * Accordingly, failure to follow the procedures of ORCP 68 affects a substantial right, and we may not disregard [them]." *Id.* at 111-12.

■     The rule's provision that the party seeking fees must allege as much explicitly is a mandatory requirement that, if not followed, causes prejudice to the party deprived of the appropriate process. Here, husband's failure to assert an intention to seek fees failed to provide wife with the requisite notice. Accordingly, the trial court erred in awarding husband his fees.

Judgment modified to provide equalizing judgment in favor of wife in amount of $31,813.75; supplemental judgment awarding husband attorney fees reversed; otherwise affirmed.