## 29

Submitted on record and briefs January 7, remanded with instructions to modify judgment to award wife additional judgment in the amount of $18,794 with interest from date of appellate judgment; otherwise affirmed on appeal and cross-appeal June 1, 2005

## In the Matter of the Marriage of

## Mary Clare AHEARN,
*Appellant - Cross-Respondent,*
*and*

## Gerald Wayne WHITTAKER,
*Respondent - Cross-Appellant.*

## 0030400; A121777

113 P3d 439

Mary Clare Ahearn *pro se.*

Patrick L. Hadlock filed the briefs for respondent-cross-appellant. With him on the briefs was Ringo, Stuber, Ensor & Hadlock, P. C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

In this dissolution of marriage proceeding under ORS 107.105, wife appeals, making four assignments of error regarding various aspects of the trial court's rulings. Husband cross-appeals, arguing that he successfully rebutted the statutory presumption of equal contribution under ORS 107.105(1)(f) as to real property in eastern Oregon acquired during the marriage and, therefore, the trial court erred when it ruled that the value of the property should be divided equally between the parties for purposes of the calculation of the parties' property awards. On *de novo* review, ORS 19.415 (2001),[1] we award wife judgment in the additional amount of $18,794 and affirm on cross-appeal.

The parties were married in 1986 and have two minor children. Before they moved to Oregon, both were employed by the United States Department of Agriculture. In November 1999, the parties agreed to move from Maryland after husband found employment in Corvallis. Husband moved immediately to Corvallis. Wife and their children stayed behind to sell the parties' residence and allow the children to finish the school year. When wife arrived with the children in Corvallis in July 2000, husband informed her that he desired to dissolve their marriage. The parties separated, and this proceeding ensued.

Wife's first assignment of error and husband's assignment of error on cross-appeal involve 217 acres of pasture land near Ukiah in Umatilla County known as the Albee property. Husband was deeded the property in 1996 by his parents, and wife's name does not appear on the deed. The trial court made the following findings and conclusions regarding the property:

"This land is a marital asset. It was a gift from husband's parents to husband in 1996, during the marriage. This gift was to replace husband's interest in another parcel

---

[1] We apply the current version of the statute in this case because the Supreme Court has implied that, in the context of a domestic relations case, the 2003 amendments to ORS 19.41(3), *see* Or Laws 2003, ch 576, §§ 88, 90a, did not affect the court's *de novo* standard of review. *See Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (applying 2003 amendments).

of land, the Edwards property, which husband had transferred without consideration to a sibling. Husband had received the Edwards property as a gift from his parents before he married wife. Both parcels of land generated small amounts of rent annually; $1,200 from Edwards and $1,000 from Albee. During the marriage that income was deposited to joint bank accounts and included as income on joint tax returns.

"The court finds by a preponderance of the evidence that husband has not rebutted the statutory presumption of equal contribution with respect to the Albee property. His mother, in credible testimony, clearly indicated that there was no intent to give any interest to wife, however, the issue is not resolved by her intent.

"The court finds that after receiving the property, husband and wife considered the property as a retirement asset. On different occasions they spoke of retiring there. They co-mingled the only income generated from the property. This was consistent with the manner in which the parties treated significant assets wife brought into the marriage, a home, and a $34,000 to $38,000 inheritance she received during the parties' marriage. The fact that husband did not add wife's name to the deed (as she had done on the deed to the house she owned before marriage) is not determinative of the issue of the intent of the parties.

"It is clear from the testimony that husband views the land differently than does wife. She sees it as [a] valuable asset while husband feels a closer connection with the land itself. The entire interest in the Albee property will be awarded to husband."

Pursuant to the trial court's conclusion, the judgment awards to husband the Albee property valued by the court at $135,000. The judgment also divides the marital estate equally, which results, after offsets, in a money judgment in favor of wife in the amount of $16,043. On cross-appeal, husband argues that he overcame the statutory presumption of equal contribution because wife was not the object of his parents' donative intent and that the trial court therefore erred in including the value of the Albee property in its division of marital property. Wife, on appeal, argues that the trial court erred in its determination of the value of the Albee property, pointing to the fact that the only appraisal of

the property by an independent appraiser in the record concludes that the value of the property is $178,200.

After this case was decided by the trial court, the Oregon Supreme Court decided *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), in which the court described the analytical framework for determining issues under the statutory presumption of ORS 107.105(1)(f).

> "That statutory presumption embodies a legislative intent to recognize that, absent evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of the marital estate, regardless of the nature of those efforts or how the property is held. * * * To effectuate that intent, the presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of martial assets. When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties."

*Kunze*, 337 Or at 134 (citations omitted).

The party seeking to overcome the presumption of ORS 107.105(1)(f)

> "has the burden of proving by a preponderance of evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. In assessing whether a party has satisfied that burden, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker. * * * If a party ultimately rebuts the presumption that the other spouse contributed equally to a disputed marital asset, then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is 'just and proper in all the circumstances,' including the proven contributions of the parties to the asset. When a party has proved that a marital asset was acquired free of any contributions from the other spouse, however, this court has determined that, absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption."

*Id.* at 134-35 (citations omitted).

█  Here, a preponderance of the evidence demonstrates that, regarding the Albee property, husband was the sole object of his parents' donative intent and that wife did not contribute to its acquisition. The trial court erred when it concluded otherwise. For that reason, husband has overcome the statutory presumption that wife contributed equally to the initial acquisition of that property. Moreover, the property required minimal attention from either party during the marriage, and there is no evidence that the appreciation resulted from significant contributions from marital assets. We therefore also conclude that husband has overcome the presumption that wife contributed equally to the appreciation of the Albee property during the marriage. *Cf. Massee and Massee,* 328 Or 195, 970 P2d 1203 (1999) (holding that the appreciation during marriage of assets brought to the marriage by the husband and held separately by him was a marital asset subject to the statutory presumption of ORS 107.105(1)(f)). Although it is correct that the rental proceeds from the property were comingled and used for family expenses, that did not affect the property itself that was given by husband's parents to husband alone. *Cf. Kunze,* 337 Or at 144-45.

█  The trial court also found that the parties "considered the property as a retirement asset." Assuming without deciding that such a fact could be considered for purposes of determining whether the statutory presumption of equal contribution is overcome, we make a different finding on *de novo* review. Wife testified that, during the marriage she and husband talked "off and on" about retiring in Washington and Oregon. Specifically, she told the trial court, "[w]e did talk about retiring at the Albee place and building a house, [because] it has—it's got—even though the house is dilapidated, it's great, [because] it has electric and it's got water." However, husband testified that wife had never been on the Edwards property and had been only once on the Albee property. Wife did not attempt to rebut that testimony. Husband also testified that the house on the Albee property is not habitable and that testimony is supported by photographs in the appraisal. Based on the entire record, we find that the discussions about retiring to the Albee property never progressed

beyond the stage of speculation and that they carry no weight under ORS 107.105(1)(f), insofar as the presumption of equal contribution is concerned. We conclude therefore that husband has overcome the statutory presumption of equal contribution for the reasons discussed above.[2]

■      In the event that the statutory presumption under ORS 107.105(1)(f) is rebutted, the next issue is what is a "just and proper" division of all of the marital property. Because wife did not contribute to its acquisition, husband is presumptively entitled to receive the value of the Albee property unless other considerations require a different result. *Kunze*, 337 Or at 145. We therefore turn to wife's first assignment of error, in which she challenges the trial court's valuation of the Albee property at $135,000. We can find no evidence in the record to support the trial court's finding. As stated before, the independent appraiser found the value of the property to be $178,200. At trial, husband challenged that evaluation. According to husband, the appraiser

> "double counts the land that has trees on it, the forested land. They had it cruised and put a value of $50,000 on the timber, which I don't dispute. I'm sure the cruiser knows more than I do. But at the same time he valued that land at a price that land around there sells with the timber on it. He said he put it at the same price as the meadow land. Either way he's double counting. If you go in and log that land you don't get a meadow."

Husband also testified that in arriving at his opinion of the value of $94,000 for the property, he considered all of the sales of agricultural land in southern Umatilla County from 1987, "modeled the relationship between the real market value that the assessor put on each property and its actual sale price[,]" and then "plugged in the real market value that the assessor had applied to the Albee property[.]"

On *de novo* review, we find as follows: The appraiser hired by wife is a certified appraiser who performs appraisals

---

[2] The trial court found that, during the trial, husband, on at least one occasion, gave untruthful testimony. As did the trial court, we take that finding into account in resolving disputed testimony. Our determination that the parties did not make any significant plans about retiring on the Albee property is based primarily on wife's testimony.

for a number of financial institutions and agribusiness firms. He has no apparent stake in the outcome of this case. In arriving at his valuation, he used a cost approach based on the premise that an informed purchaser would not pay more for a property than the cost of an equally desirable substitute with equal utility. He concluded that the highest and best use of the property is rural residential/recreational use combined with grazing and timber use. The appraiser considered six comparable sales. Three of the comparable sales had timber on the property. The appraiser placed less weight on one sale because it did not, in his opinion, reflect the market for property with "high recreational and/or dwelling potential." He also placed less weight on two sales because "the timber contribution and the use of the property as trading material resulted in an inflated value." He then used as comparables one sale where the buyer intended to log and resell the property and two sales of property on which there was no timber to arrive at a comparable value of $575 per acre or $125,000 without the value of improvements. He then valued the improvements—the dwelling, well, and septic system—at $6,700 and the timber at $46,500 for a total value of $178,200.

We find the appraiser's methodology and reasoning more persuasive than husband's opinion as to the property's fair market value. First, we disagree with husband that a person purchasing the land for its highest and best use would necessarily log the land before building a residence there. Therefore, in our view, there is no "double counting" in the appraiser's evaluation, as husband claims. Moreover, the "comparables" that the appraiser used were in the general vicinity of Ukiah rather than in southern Umatilla County, and they more closely approximate a more likely use of the property, a factor that husband's methodology fails to employ. We disagree with the appraiser's evaluation in only one minor respect. He assigned a value of $5,612 to the dwelling on the property. After viewing the pictures of the dwelling, we conclude that a prospective buyer would likely consider the dwelling of no value. We conclude therefore that the value of the Albee property is $172,588.

In light of our determination of the value of the Albee property, we turn to what is a "just and proper" distribution

of the marital estate. Under *Kunze*, we must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and whether any inequity would result from the award of that asset to that spouse as separate property. 337 Or at 142. The Albee property itself was not comingled with the parties' other assets. It was given by husband's parents to husband to replace the Edwards property that he had been given before the parties' marriage. Only the rental proceeds from the Albee property were comingled with the parties' other marital assets during their marriage.

■ The remaining question is whether any inequity would result from the award of that asset to husband as separate property. That determination requires consideration of some additional circumstances. When the parties married in 1986, wife brought into the marriage a house in which she had approximately $35,000 in equity. That initial investment became part of the proceeds from the sale of that house in 1990, which the parties then invested in the next house that they purchased jointly. In addition, wife received an inheritance of between $34,000 and $38,000 during 1988 and 1989. That money was put into accounts (the Mosaic accounts) and also into the parties' new residence. The trial court determined that the statutory presumption of equal contribution had been rebutted with respect to one Mosaic account in the amount of $5,202 and awarded it to wife without inclusion in the marital property subject to division. The remainder of the monies were considered by the court as having been comingled with the rest of the marital estate and became subject to the court's equal division.

In addition, this is a case in which both parties worked during the marriage and are currently employed. Although wife does not work full time, the trial court found that full-time employment is available to her that would cause her gross income to exceed $100,000 annually. Husband's gross annual income is in excess of $80,000.[3] Also, wife is afflicted with the weakening of connective tissue in her

---

[3] This case is not a case in which an unequal division of the jointly acquired marital assets is inadequate to allow both spouses to achieve economic self-sufficiency. *Cf. Pierson and Pierson*, 294 Or 117, 124, 653 P2d 1258 (1982).

aorta, a condition that is life threatening. The trial court found that her life expectancy is reduced; however, the risk that she may experience rupture of the aorta is unknown. Under the circumstances, we give no weight to that factor. In addition, wife is the custodial parent, and she returned to Maryland with the children after the parties' separation to establish a new residence and to regain her employment. Finally, there is no persuasive evidence that husband ever intended to keep the Albee property only for his benefit. Rather, had the marriage continued, it is inferable from the record that wife would have benefitted from whatever use the parties assigned to the Albee property.

The trial court awarded wife an equalizing judgment of $56,161 based on its property division. After deducting the sum of $40,118 for husband's support overpayment, the judgment awards wife a net judgment of $16,043 to be paid from husband's share of the proceeds from the sale of the Corvallis residence. Under our findings, if the marital estate is reduced by the value of Albee property, the marital estate would not only be reduced by $135,000 (based on the trial court's evaluation), but husband would leave the marriage in a much better financial condition than wife in light of the value of the Albee property. We think that, under the circumstances of wife's contribution of her separately acquired assets to the marriage and the manner in which the parties treated their assets acquired during the marriage, it would be inequitable to award the value of the Albee property solely to husband. We therefore reject husband's argument on cross-appeal that the value of the Albee property should not be considered. Rather, we conclude that the property award to wife should be increased by one half of the difference between the value of the Albee property found by the trial court and the value found on appeal. That difference is $37,588. On remand, wife is entitled to an additional judgment in the amount of $18,794. We recognize that husband may not have the immediate ability to pay the judgment. On remand, the trial court should enter judgment for wife in that amount with interest accruing at the statutory rate from the date of the appellate judgment, provided that no execution shall issue on the judgment for a period of 18 months from the date of the appellate judgment.

In her remaining assignments of error, wife challenges the determinations by the trial court of the extent of husband's responsibility for private school tuition and reimbursement by husband of wife's moving expenses back to Maryland. We do not think that we can significantly improve on the trial court's decisions on those issues, and a more detailed discussion of those issues would not benefit the bench or the bar.

Remanded with instructions to modify judgment to award wife additional judgment in the amount of $18,794 with interest from date of appellate judgment; otherwise affirmed on appeal and cross-appeal.