Argued and submitted August 21, 2006, judgment modified to provide for equalizing judgment of $311,520, payable to wife within six months after entry of appellate judgment; to award wife Siltcoos Lake property free and clear of encumbrances; to require parties to equally share reasonable uninsured counseling expenses for child; to award attorney fees to wife; otherwise affirmed March 21, appellant's petition for reconsideration filed April 4 and response to appellant's petition for reconsideration filed April 11 allowed by opinion May 30, 2007

See 213 Or App 235, 159 P3d 1292 (2007)

In the Matter of the Marriage of

Suzanne GANO-RIDGE,
*Petitioner-Appellant,*

*and*

James Ivan RIDGE,
*Respondent-Respondent.*

Lane County Circuit Court
150316348; A127997

155 P3d 84

Jeffrey E. Potter argued the cause for appellant. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Vanessa L. Carter argued the cause for respondent. With her on the brief was Shepard Law Offices.

Before Edmonds, Presiding Judge,* and Brewer, Chief Judge, and Wollheim, Judge.**

BREWER, C. J.

---

* Edmonds, P. J., *vice* Linder, J.
** Wollheim, J., *vice* Ceniceros, S. J.

## BREWER, C. J.

Wife appeals from a dissolution judgment, assigning error to the property division, to the calculation of child support, and to the trial court's failure to award her attorney fees. On *de novo* review, ORS 19.415(3), we modify the property division, award wife attorney fees, order husband to share in the minor child's counseling expenses, and otherwise affirm.

The parties were first married in October 1993 and then again in April 1995, after husband's dissolution from a previous marriage became final.[1] They separated in November 2002, and the judgment dissolving their marriage was entered in March 2005. At the time of trial, husband was 52 and wife was 47. The parties have one child, who was born in 1994. Wife was awarded custody of the child, and husband does not contest that determination.

Wife entered the marriage with a $10,000 college debt and a one-third interest in 160 acres of land in Lake County (the Summer Lake property). In contrast, husband owned significant assets at the time of the marriage. He is the only child of his parents. His father died in 1992, before the parties were married. Husband's mother lived with husband after his father's death, and she continued to live with the parties after their marriage and until her death in 1996. Before the marriage, and as a part of her estate plan, husband's mother made husband a joint owner of some of her assets, including a Paine Webber investment account. When husband's mother died in 1996, he became the sole owner of the Paine Webber account as well as her house, which he sold for $140,000. He placed the proceeds of the house sale and a small inheritance from other relatives into the Paine Webber account.

At the time of the marriage, husband also owned interests in four Wyoming properties, the Merritt Ranch, the Hoopes Ranch, the Afton Homestead, and the Brough Ranch. For the first eight years of the marriage, the Afton

---

[1] The parties apparently agree that for purposes of the issues relating to the property division, the October 1993 date is the relevant date of marriage.

Homestead was the marital residence, from which the parties managed the contiguous Merritt, Hoopes, and Nield ranch properties. The house was dilapidated. Husband had begun an addition and remodel in 1991, and wife and husband worked together to complete it. Wife has a master's degree in social work, but she has not worked in that field and was not employed outside the home during the marriage. At the time of their marriage, the parties contemplated that they would be partners in the ranching enterprise and would work as a "married team" to manage the properties. Wife managed the household and, at least at the beginning of the marriage, devoted considerable efforts to the decision-making, planning, and operations of the ranching enterprise. Her contributions included shared responsibility for ranch management, remodeling the family home, homemaking and, in the first three years of the marriage, caring for husband's mother.

During the marriage, husband paid off the encumbrance on the Merritt Ranch, and he acquired the Nield property in Wyoming, the Steed property, located in both Wyoming and Idaho, the Lind and Siltcoos Lake properties in Oregon, and the Griffeth Ranch and Hot Springs properties in Idaho. In 1999, husband established the James I. Ridge Revocable Living Trust, into which he placed all of the properties held in his name, which included all of the properties except the Merritt property. Husband named wife as successor trustee, but he removed her in February 2004, after she filed for dissolution.

Because there was little income from the ranch properties, the parties lived primarily on Paine Webber funds until husband withdrew the remaining funds from that account in 1998. Wife had no independent source of income but, during the marriage, she shared in financial management responsibilities. The parties had a joint checking account, and wife signed checks for ranch and household expenses on that account and on husband's separate accounts, including the Paine Webber account. Wife also incurred credit card debt for the parties' living expenses, and she is listed as a co-obligor on a $400,000 loan that the parties

took out in 2001 to clear encumbrances from two ranch properties. In 1995, 1996, 1999, 2000, 2001, and 2002, the parties filed joint tax returns.

The parties were separated between June 1998 and February 1999 and, during that period, wife lived in Oregon on the Siltcoos Lake and Summer Lake properties. In February 1999, the parties reconciled, and wife returned to Wyoming. From May 2001 until November 2002, the parties "roughed it" in a camper and an unimproved structure located on the Griffeth Ranch and Hot Springs properties in Idaho. They planned to develop the property as a health spa and dude ranch. In November 2002, the Idaho Department of Health and Welfare informed the parties that they needed to make certain improvements to the property to make it habitable and that, if their living conditions did not improve, they risked losing custody of the child. At that time, wife took the child to the Siltcoos Lake property in Oregon, and the parties permanently separated.

The primary issue on appeal is the division of property. The trial court awarded wife personal property valued at $38,000, her Summer Lake property, which it did not separately value as a part of the marital estate, and the two Oregon properties that husband acquired during the marriage—Siltcoos Lake and Lind—which the court estimated had a total value of $206,000, subject to encumbrances of $17,000. The court also awarded wife an equalizing judgment of $90,495. Accordingly, the trial court awarded wife property to which it assigned a value of $334,495, or $317,495, net of encumbrances. The court awarded to husband the remainder of the properties and also assigned to him almost all of the marital debt and encumbrances on the properties. On appeal, wife contends that the trial court overvalued the properties that it awarded to her, undervalued the properties awarded to husband, and awarded a disproportionately large share of the marital property to husband. For those reasons, and because, she asserts, the court failed to adequately consider her contributions to the marriage, wife argues that the court did not make a just and proper distribution of property. On *de novo* review, ORS 19.450, we modify the award.

In dividing the parties' property, we follow ORS 107.105(1)(f)[2] as construed in *Kunze and Kunze*, 337 Or 122, 133-36, 92 P3d 100 (2004). Under that case, we undertake a series of inquiries, described by the Supreme Court as follows:

"Because ORS 107.105(1)(f) distinguishes between property brought into the marriage and marital assets, the court's first step in applying that statute is to determine when the parties acquired the property that is at issue. If the parties acquired the property at issue before the marriage, then the court considers only what is 'just and proper in all the circumstances' in distributing that property. ORS 107.105(1)(f).

"If a party establishes that the property at issue is a marital asset, however, then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis. * * * [T]he presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets. When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties.

"Because the presumption of equal contribution under ORS 107.105(1)(f) is rebuttable, either or both of the parties may seek to overcome it. If a party seeks to overcome that presumption, then that party has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. In assessing whether a party has satisfied that burden, ORS

---

[2] ORS 107.105(1) provides, in part:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker. ORS 107.105(1)(f) (court shall consider contribution of spouse as homemaker). If a party ultimately rebuts the presumption that the other spouse contributed equally to a disputed marital asset, then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is 'just and proper in all the circumstances,' including the proven contributions of the parties to the asset. When a party has proved that a marital asset was acquired free of any contributions from the other spouse, however, this court has determined that, absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption.

"After the court makes its preliminary determination of the appropriate division of the marital assets by applying the statutory presumption, ORS 107.105(1)(f) next requires that the court consider what division of all the marital property—that is, both the marital assets and any other property that the parties had brought into the marriage—is 'just and proper in all the circumstances.' By contrast to the focus upon the parties' respective contributions under the statutory presumption, the court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of all the circumstances of the parties. * * * The trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion."

(Citations omitted.) The court also clarified that the question whether the spouses have commingled separately held assets is part of the court's application of the "just and proper" inquiry and bears on the inquiry regarding comparative contribution to acquisition for purposes of rebutting the presumption of equal contribution only in circumstances in which assets have been so commingled as to render tracing impossible. *Id.* at 142.

We begin with a discussion of the properties owned by husband at the time of the marriage—the Hoopes Ranch, the Afton Homestead, the Merritt Ranch, and the Brough Ranch. In 1990, husband purchased the Hoopes Ranch and the Afton Homestead in a combined acquisition. He paid the

$300,000 purchase price partially in cash and financed the remaining balance by assuming a pre-existing Wyoming State Loan and Investment Board (SLIB) loan. Thereafter, husband made payments on that loan from the Paine Webber account. The Hoopes Ranch and Afton Homestead together consist of 387 acres of land, and they include the house that the parties remodeled and considered to be the marital residence for the first eight years of the marriage. The Hoopes Ranch and Afton Homestead are partially contiguous with the Merritt Ranch and, as noted, the parties worked those properties as a single unit.

In 2001, the parties took out a $400,000 SLIB loan that was secured by the Hoopes and Merritt ranches. The proceeds of that loan were used to pay off the $121,000 balance owing on the first SLIB loan on the Hoopes Ranch and to satisfy a $200,000 debt and encumbrance on the Brough Ranch, which husband had acquired shortly before the marriage. At the time of trial, the Hoopes, Afton, and Merritt properties were together encumbered by the SLIB loan balance of approximately $444,500.

Husband opined that the Hoopes and Afton properties together were worth $303,460 at the time of the marriage. Husband offered evidence that, at the time of trial, the Hoopes Ranch and Afton Homestead had a combined value of $965,000 and that they therefore had appreciated in value during the marriage by approximately $661,540.[3] Husband is not an appraiser; he based his opinions of value on his experience in buying and selling real estate. The trial court accepted husband's valuations, implicitly finding them to be more credible than those of wife's expert appraisers. Absent a principled reason to do so, we will not second-guess the implicit credibility determinations inherent in that finding. *Tsukamaki and Tsukamaki*, 199 Or App 577, 581, 112 P3d 416 (2005); *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000); *Kempke and Kempke*, 151 Or App 434, 440, 949 P2d 1239 (1997). Accordingly, on *de novo* review, we also accept husband's valuations.

---

[3] Husband did not offer expert opinion as to the value of the Wyoming properties. He asked the trial court to use the values he provided in his pretrial statement, and he adopted those values as his testimony.

As noted, wife worked in partnership with husband for several years to improve the Hoopes and Afton properties, to manage the ranch, which also encompassed the Merritt and Nield properties, and to remodel the home and care for the family. She shared in the household expenses by using her credit card, and she also assumed a personal financial obligation when the parties took out the second SLIB loan that was secured by the Hoopes and Merritt ranches. We have no difficulty concluding that the after-marriage equity of $121,000 acquired on the Hoopes Ranch as a result of the parties' refinancing of the SLIB loan, and the marital appreciation in the value of the Hoopes Ranch and Afton Homestead, are marital assets as to which husband did not rebut the presumption of equal contribution.

Shortly before the marriage, husband acquired the Brough property for $100,000, which consists of 147.12 acres of pastureland; he purchased that property as hay ground for his animals. He testified that the property had that same value at the time of the marriage. At the time of dissolution, he estimated the value of the property to be $294,000. Husband took out a $200,000 loan against the property in 2000 in order to buy the Hot Springs property, and the parties paid off that obligation in 2001 using proceeds from the second SLIB loan. In addition to sharing responsibility for the SLIB loan, wife's contribution to the management of the Brough property involved preventing a shooting range from being located nearby, which in her view would have reduced the property's value as grazing land.

Wife made no contribution to the initial acquisition of the Brough property, and we conclude therefore that husband rebutted the presumption of equal contribution with respect to the acquisition of that property. The appreciation in the value of that property during the marriage, $194,000, is a marital asset that is subject to equal division, unless the presumption of equal contribution was overcome. The presumption can be overcome by evidence that the appreciation in separately owned property was passive, involving no contribution by either spouse. *Kunze*, 337 Or at 143. We conclude that husband did not overcome the presumption with respect to the Brough property. Although that parcel consists solely of bare land, and the increase in its value is attributable

largely to passive appreciation, as previously noted, wife became a co-obligor on the $400,000 SLIB debt that the parties incurred in part to pay off the $200,000 encumbrance on the Brough property. We conclude that that contribution prevents the rebuttal of the presumption of equal contribution with respect to the appreciation in value in the Brough property. Accordingly, we conclude that the appreciation in value of the Brough Ranch is a marital asset to be shared equally by the parties. Further, the use of the parties' shared SLIB obligation to pay off the encumbrance on the Brough Ranch is evidence that the property was commingled into the parties' joint financial affairs and is relevant to reaching a "just and proper" division of the value of that asset.[4]

Husband acquired the Merritt Ranch in 1990 for $150,000. The property consists of 500 acres. Approximately $140,000 was owing on the property at the time of the marriage; in 1996, husband satisfied that debt with Paine Webber funds. At that time, the parties took title to the property as tenants by the entirety; it became the only property to which they held joint title. Husband asserted that the Merritt Ranch was worth $196,540 at the time of the marriage and $225,000 at the time of trial, for marital appreciation of $28,460. That property, together with the Hoopes Ranch, is encumbered by the SLIB debt, which had a balance at the time of trial of approximately $444,500.

As discussed, husband acquired the Merritt Ranch before the marriage, but he finished paying for it with Paine Webber funds during the marriage. Wife contends that the Paine Webber funds were "inherited" by husband during the marriage and, thus, were a marital asset. It follows, wife asserts, that any properties acquired with those funds— including the Merritt, Nield, Lind, Siltcoos Lake, and Griffeth Ranch properties—also should be treated as marital assets. We agree with wife that any interest in the Paine Webber account that husband acquired during the marriage was a marital asset, as are the properties that he purchased

---

[4] On the last day of trial, husband asked the trial court to release 40 acres of the Brough Ranch to be sold, and the parties agreed that the proceeds of any sale would be equally divided by them. The trial court agreed to enter an order if the parties submitted one, but there is nothing in this record indicating that such an order ever was entered.

during the marriage with the proceeds of that account, subject to the presumption of equal contribution. ORS 107.105(1)(f); *Kunze*, 337 Or at 134. However, the presumption has been rebutted. Husband was a joint owner of the Paine Webber account before the parties' marriage. As a joint owner, husband presumptively became the sole owner of that account on his mother's death without any further action on her part,[5] rebutting the presumption that wife was an object of husband's mother's donative intent with respect to the Paine Webber account. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982). *Compare Olesberg and Olesberg*, 206 Or App 496, 502, 136 P3d 1202 (2006) (to defeat presumption of equal contribution to an inheritance during marriage, spouse must provide affirmative evidence that other spouse was not object of donative intent) *with Ahearn and Whittaker*, 200 Or App 29, 34, 113 P3d 439 (2005) (evidence that husband's parents' gift to husband was intended to replace property that he had received before marriage and given without consideration to a sibling established that husband was sole object of his parents' intent).

■ ■ Further, we reject wife's contention that husband's use of Paine Webber funds to pay the parties' living expenses converted the entire account into a joint asset. Husband never added wife's name to the account, and he placed his sole name on the titles to each of the properties that he purchased with Paine Webber funds. That evidence demonstrates that husband did not intend to treat the entire account as joint property. *See Winkler and Winkler*, 200 Or App 524, 535, 115 P3d 948, *rev den*, 339 Or 475 (2005) (husband's limited sharing of separately held investment account for payment of household expenses did not make the account a marital asset in absence of evidence that husband intended the account to become a marital asset). In any event, a spouse's commingling of a separately owned asset with the marital estate is not a consideration in the analysis of whether the statutory presumption of equal contribution to an asset has been rebutted. *Tsukamaki*, 199 Or App at 584. Accordingly, we conclude that insofar as any portion of the

---

[5] *See* ORS 708A.470(1), which provides, in part, that "[s]ums remaining on deposit in a bank at the death of a party to a joint account are rebuttably presumed to belong to the surviving party or parties as against the estate of the decedent."

Paine Webber account was a marital asset, husband overcame the presumption of equal contribution as to that asset. For that reason, we conclude that the equity in the Merritt property was not increased with the proceeds of a joint asset.[6]

■ ■ However, that does not conclude the analysis with respect to the Merritt property. Although the encumbrance on that property was satisfied by proceeds from the Paine Webber account—which was husband's separate asset—and wife did not make a financial contribution to the initial acquisition of the Merritt property, her work in the home and on the ranch, as well as her shared responsibilities for the management of the property, demonstrate that the parties intended for the equity acquired in the property during the marriage to be a joint asset. *See Winkler*, 200 Or App at 534 (evidence that property served as family home over which both parties shared control sufficient to show that property was commingled into joint asset). Additionally, when husband paid off the encumbrance on that property during the marriage with Paine Webber funds, he took title in the parties' joint names, thereby evincing an intention to create a joint asset. Although legal title does not automatically convert separately acquired property into a marital asset, *Kunze*, 337 Or at 146, husband testified that, by placing her name on the title to the Merritt property, he intended wife to be a joint owner of the property. Accordingly, we conclude that, in addition to marital appreciation of $28,460, the remaining value of the Merritt property, $196,540, was sufficiently commingled so as to justly and properly be subject to an equal division between the parties.

Because the Hoopes, Afton, and Merritt ranches are encumbered by a single indebtedness, it is appropriate to consider together their contribution to the marital estate. As we have noted, the value of the Merritt property is subject to equal division by reason of its thorough commingling in the parties' financial affairs. Additionally, the appreciation in value of $661,540 in the Hoopes and Afton properties and the after-marriage increase in equity of $121,000 are properly treated as marital assets. Using husband's values, the

---

[6] There is no evidence that the Paine Webber account appreciated in value during the marriage.

Hoopes, Afton, and Merritt ranches had a combined worth at dissolution of approximately $1,190,000. They were encumbered by indebtedness of approximately $444,500, leaving a combined net equity of approximately $745,500. A deduction from that amount of $182,460 ($303,460 minus $121,000) for husband's separate premarital contribution to the acquisition of the Hoopes and Afton properties, results in equity, net of encumbrances, of $563,040, to be divided equally between the parties.

We next consider the properties that were acquired during the parties' marriage. Wife contends that those properties, the Steed, Nield, Lind, Siltcoos Lake, Griffeth Ranch, and Hot Springs properties are marital assets to which the presumption of equal contribution applies and that the presumption has not been rebutted. *Kunze*, 337 Or at 134.

The Nield property is a 20-acre parcel that is contiguous with the Hoopes and Merritt properties. Husband acquired that parcel shortly after the marriage for $15,000, using his Paine Webber funds. According to husband, the Nield property was worth approximately $30,000 at the time of the dissolution. During the marriage, the parties worked the Nield parcel along with the Hoopes and Merritt properties. We conclude that husband rebutted the presumption of equal contribution as to the acquisition of the Nield property but that he did not rebut the presumption that, as a result of her noneconomic contributions to the parties' ranching endeavors, wife contributed equally to the $15,000 marital appreciation in value of the property.

According to husband, the 548-acre Steed Ranch was worth $540,000 at the time of trial. Husband's mother deeded that property to him during the marriage "as his sole and separate property." That evidence showed that husband's mother's donative intent was directed to husband alone; husband therefore overcame the presumption of equal contribution with respect to the acquisition of that property. Additionally, the property is unimproved and was not developed by the parties during the marriage. Any increase in value was passive; accordingly, husband rebutted the presumption that wife contributed equally to any marital appreciation in the value of the Steed Ranch. *Kunze,* 337 Or at 143; *Ahearn,* 200

Or App at 34. The property is encumbered by a US Bank loan of $86,000.

In 1996, husband purchased a one-half interest in the Lind property for $6,000; the acquisition was funded from the Paine Webber account. The property is undeveloped. At trial, husband estimated that the value of his interest in the property was $40,000. We conclude that husband has rebutted the presumption of equal contribution with respect to the acquisition of the Lind property and that he has also shown that wife did not contribute to the appreciation in value of that property during the marriage.

In 1997, husband acquired the Siltcoos Lake property for $120,000, using Paine Webber funds. The Siltcoos Lake property consists of 15 acres and a cabin, and it is accessible only by boat. According to husband, the property's value at the time of dissolution was $166,000. There is no evidence that wife contributed to the acquisition of the property. We conclude, therefore, that husband overcame the presumption of equal contribution with respect to the acquisition of the property. *Lind and Lind*, 207 Or App 56, 67, 139 P3d 1032 (2006). However, there is evidence that wife helped to improve the cabin during the marriage, and we conclude for that reason that husband did not overcome the presumption that wife contributed equally to its marital appreciation. At the time of dissolution, the property was encumbered by a $7,000 tax lien and an attorney fee lien of $10,000 placed on it by husband's attorney. Accordingly, the net marital appreciation was in the amount of $29,000.

In 1999, husband purchased the Griffeth Ranch, consisting of 300 acres near Preston, Idaho. Husband purchased that property as additional pastureland for the winter months. The purchase price was $360,000, which husband paid, in part, with the remainder of his Paine Webber funds. He financed the balance of the purchase price with US Bank loans that he incurred in his sole name. The loans were secured by livestock and equipment on the Griffeth Ranch and a 60-acre portion of the Steed property. Husband opined that the Griffeth Ranch had not increased in value since its

acquisition. We conclude that husband rebutted the presumption of equal contribution with respect to the acquisition of the Griffeth Ranch and that there was no marital appreciation in the value of that property.

■ The Hot Springs property adjoins the Griffeth Ranch. It consists of 4.5 acres of land with several hot springs and a shed-like structure. In March 2000, husband purchased the Hot Springs property for $110,000. To finance the purchase of the property, husband used the proceeds of the $200,000 loan, taken out in his name only, that was secured by the Brough Ranch. Although he considers the property to be his alone, husband testified that he bought the property with wife in mind, because he thought that they could develop the property as a resort. The parties lived in an RV and a shed on the property for 18 months, between May 2001 and November 2002. Husband was living there at the time of dissolution. The parties agree that the property has not appreciated and that it was worth $110,000 at the time of dissolution. Wife contends that despite husband's purchase of the property with his own funds, the presumption of equal contribution to the acquisition of the Hot Springs property was not rebutted, because its purchase was facilitated by a leveraging of equity on the Brough Ranch, which we have concluded is a marital asset by virtue of wife's undertaking of liability on the SLIB loan. We conclude that that link is too attenuated to constitute an equal contribution by wife and that husband has rebutted the presumption of equal contribution to the acquisition of the Hot Springs property.

The foregoing property-by-property analysis addresses the initial inquiries under *Kunze*, that is, the determination of which properties are marital assets, whether the presumption of equal contribution was rebutted, and, in the case of the Merritt property, the issue of the extent to which commingling makes it inappropriate to trace the premarital equity of an asset to its source.

In light of that analysis, we consider the particulars of the property and debt division that the trial court made. That division is summarized as follows:

| Husband | | Wife | |
|---|---|---|---|
| Hoopes/Afton | $ 965,000 | Summer Lake | unvalued[7] |
| Merritt | $ 225,000 | Lind | $ 40,000 |
| Nield | $ 30,000 | Siltcoos Lake | $ 166,000 |
| Brough | $ 294,000 | Equalizing Judgment | $ 90,495 |
| Steed | $ 540,000 | Personal Property | $ 38,000 |
| Griffeth | $ 360,000 | | |
| Hot Springs | $ 110,000 | | |
| Personal Property | $ 60,000 | | |
| *Subtotal* | $2,584,000 | *Subtotal* | $ 334,495 |
| Hoopes/Afton, Meritt, Steed encumbrance | -$ 530,500 | Debt | -$ 17,000 |
| Equalizing Judgment | -$ 90,495 | | |
| Marital debt | -$ 105,000 | | |
| *Net award husband* | $1,858,005 | *Net award wife* | $ 317,495 |

In short, under the trial court's division of property, using husband's property values, husband received a net award more than five times greater in value than the award to wife, with a net difference of $1,540,510.

By contrast, after considering each of the properties individually, we have identified the specified portions of the equities in the following properties either as marital assets or commingled equities that should be equally divided between the parties:

| | |
|---|---|
| Brough Ranch appreciation | $194,000 |
| Hoopes/Afton/Merritt Properties (appreciation and equity, less encumbrances) | $563,040 |
| Nield Property (appreciation) | $ 15,000 |
| Siltcoos Lake Property (appreciation less encumbrances) | $ 29,000 |
| *Total* | $801,040 |

---

[7] The Summer Lake property was presumably not valued by the trial court because the value of wife's interest is small and because the parties raised no contention with respect to that property at trial; nor do they do so on appeal.

One-half of that sum, $400,520, plus the value of the personal property awarded to wife, $38,000, yields $438,520. That amount exceeds by $121,025 the net award of $317,495 that the trial court made in wife's favor. Initially, we conclude that the equalizing judgment that the court entered should be increased by that amount.

However, that adjustment does not end the analysis. Having made our preliminary determination of the appropriate division of the marital assets by applying the statutory presumption and considering the extent to which individual assets were commingled so that they should be equally divided without regard to tracing, ORS 107.105(1)(f) next requires that the court consider what division of all the marital property—that is, both the marital assets and any other property that the parties had brought into the marriage—is "just and proper in all the circumstances." *Kunze*, 337 Or at 135-36. In contrast to the focus on the parties' respective contributions under the statutory presumption, the court's final inquiry as to the "just and proper" division concerns the equity of the property division in view of all of the circumstances of the parties. *Id.*

Numerous circumstances militate in favor of a disproportionate award in husband's favor. Wife entered the marriage with little property and some debt; in contrast, husband owned significant assets. With the exception of the Summer Lake property, which wife owned before the marriage and in which husband claimed no interest, all of the marital property was acquired with husband's separate funds. For the most part, husband intended to hold that property separately during the marriage, and he did so. During the marriage, husband purchased properties from his separate funds and, with the exception of the Merritt property, he kept them in his own name. Also, with the exception of the Merritt, Hoopes, Afton, and Brough properties, the parties did not significantly commingle their real properties into their joint affairs. Thus, it is appropriate that husband be awarded a greater share of the assets. *See Pierson and Pierson*, 294 Or 117, 123, 653 P2d 1258 (1982); *Dull and Dull*, 104 Or App 275, 278, 800 P2d 306 (1990).

We conclude, nonetheless, that the overall award must be modified in wife's favor in light of several other important circumstances of the parties. *Kunze*, 337 Or at 135. First, a just and proper division of property must recognize wife's economic and noneconomic contributions to the marital estate, and her participation in the common ranching enterprise during the eight years that the parties lived together. Those contributions were substantial.

Second, it also is appropriate to consider the extent to which the parties commingled certain of their financial affairs. Husband contributed his funds to wife's personal expenses. For example, wife had access to husband's checking accounts during the marriage and wrote checks to pay some personal expenses for her mother and her college indebtedness. Wife, in turn, contributed her credit to family and ranch indebtedness. There is evidence that wife paid household bills on her personal credit card and is personally obligated on the SLIB loan, which paid off the Brough and Hoopes encumbrances and became an encumbrance on the Hoopes, Afton, and Merritt properties; although payment of those debts have been assigned to husband, they do represent commingling of finances. Throughout the marriage, the parties lived frugally, and wife's suggestion that properties be sold as a source of cash flow was rejected by husband for the reason that those properties would support them in their retirement. Additionally, as discussed, husband and wife took joint title to the Merritt property, and the evidence showed that husband intended wife to be a joint owner of that property.

Third, a just and proper award must take into account wife's limited ability to pay indebtedness associated with property that is awarded to her. The Siltcoos Lake property is encumbered by a debt of $17,000, much of which is attributable to husband's attorney fees, and husband agrees that wife should not have been ordered to pay that debt. We conclude that it is just and proper to require husband to pay and hold wife harmless from the debts against the Siltcoos Lake property.

Finally, under the circumstances of this case, it is just and proper to increase wife's award to account for her

homemaker's status, her limited income earning ability, and the goal of financial self-sufficiency. Throughout the marriage, wife was financially dependent on husband. She did not work outside the home and ranch enterprise. Husband's cash flow from ranching operations is limited and, for that reason, the parties agreed that a spousal support award was not appropriate. However, even though wife is relatively young and in good physical health, she will require a period of transition to become self-sufficient.

Before the trial court, wife expressed an interest in being awarded the Griffeth and Hot Springs properties or the Steed or Brough ranches as a source of income. However, we are not persuaded that those properties are income-producing independently from the other ranch operations, that they could be readily developed by wife for that purpose, or that it would be prudent to break up a potential source of income to husband for his child support obligation. Instead, we conclude that, in view of wife's limited work experience, the child custody award, and the absence of a spousal support award, it is just and proper to increase the equalizing judgment by an additional $100,000 so as to enable wife to become more financially self-sufficient. *See Niman and Niman*, 206 Or App 259, 268, 136 P3d 105 (2006); *Thompson and Thompson*, 204 Or 53, 60, 129 P3d 189 (2006).

The foregoing adjustments leave the parties with the following net property awards: husband: $1,619,980;[8] and wife $646,015.[9] We realize that the overall division remains substantially unequal. However, we conclude that, under all of the circumstances of the parties (including the attorney fee award discussed below), the division is just and proper.

---

[8]

| $2,584,000 | total assets awarded to husband |
| -$ 311,520 | equalizing judgment: $90,495 + $100,000 + $121,025 |
| -$ 105,000 | marital debt |
| -$ 530,500 | Hoopes/Afton, Merritt, Steed encumbrances |
| -$ 17,000 | Siltcoos Lake encumbrance |
| $1,619,980 | |

[9]

| $ 334,495 | total assets awarded to wife |
| $ 311,520 | equalizing judgment |
| $ 646,015 | |

Wife also assigns error to the trial court's failure to award her attorney fees. We agree that, in light of the disparate economic circumstances of the parties, it is appropriate for husband to be responsible for wife's reasonable attorney fees. *Haguewood and Haguewood*, 292 Or 197, 638 P2d 1135 (1981) (in dissolution cases, courts may take into consideration relative financial position of parties in determining whether to award attorney fees); *see* ORS 20.075(1).

Finally, the trial court ordered wife to pay any uninsured counseling expenses for the child. Without unnecessary elaboration, we conclude that the parties should equally share responsibility for the child's reasonable uninsured counseling expenses.

Judgment modified to provide for equalizing judgment of $311,520, payable within six months after entry of appellate judgment; to award wife Siltcoos Lake property free and clear of encumbrances; to require parties to equally share reasonable uninsured counseling expenses for child; to award attorney fees to wife. Otherwise affirmed.